IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| VERONICA LOWE LINNEAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 121-098 |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.  BACKGROUND

Plaintiff applied for DIB on August 2, 2019, alleging a disability onset date of April 1, 2019. Tr. ("R."), pp. 145-46. Plaintiff was forty-nine years old at her alleged disability onset date and fifty-one years old at the time the Appeals Council ("AC") denied review of the decision currently under consideration. R. 1, 145. Plaintiff alleged disability based on the following

conditions: carpal/cubital tunnel in both hands. R. 198. Plaintiff completed the twelfth grade and accrued work history as an embroiderer, cashier, and supermarket worker . R. 31-32, 200.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 6, 70-73, 75-78. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 81-82, and the ALJ held a hearing by video on November 18, 2020. R. 27-46. At the hearing, the ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from William Irvin, a Vocational Expert ("VE"). Id. On December 15, 2020, the ALJ issued an unfavorable decision. R. 12-22.

Applying the sequential process required by 20 C.F.R. §§ 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since April 1, 2019. (20 C.F.R. §§ 404.1571 *et seq*.)

2. The claimant had the following severe impairments: carpal/cubital tunnel syndrome and tibial sesamoiditis. (20 CFR 404.1520(c)).

3. The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), [1] except that she must be afforded the

---

[1]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b).

  opportunity to either sit or stand for one or two minutes at a time in the workplace. The claimant cannot climb ladders, ropes or scaffolds and should avoid unprotected heights. She can handle frequently with the bilateral upper extremities. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

5. The claimant was born on January 13, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563). The claimant has at least a high school education (20 CFR 404.1564). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569 and 404.1569(a)). Therefore, The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2019, through the date of this decision. (20 CFR 404.1520(g)).

R. 14-22.

  When the AC denied Plaintiff's request for review of this unfavorable decision on April 30, 2021, R. 1, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). On June 22, 2021, Plaintiff filed this civil action requesting reversal or remand of the adverse decision of the ALJ. (Doc. no. 1.) Plaintiff argues (1) the Commissioner's decision is not supported by substantial evidence because the ALJ improperly considered Plaintiff's subjective complaints in determining her RFC; and (2) the structure of the Social Security Administration ("SSA") is unconstitutional. See doc. no. 15 ("Pl.'s Br."); doc. no. 18 ("Pl.'s Reply Br."). The Commissioner argues (1) the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed and (2) SSA's structure does not entitle Plaintiff to a rehearing. See doc. no. 17 ("Comm.'s Br.").

II.     **STANDARD OF REVIEW**

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ Did Not Err in Finding Plaintiff's RFC

##### 1. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and

5

non-exertional limitations.  Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).

### 2. The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  Under the Eleventh Circuit's standard, Plaintiff must show:  (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction.  Id.  When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability."  Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (*per curiam*) (citing 20 C.F.R. § 404.1529(c)(4)).  However, as explained *supra*, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.  See SSR 96-5p; see also 20 C.F.R. § 404.1527(d).

"Credibility determinations are, of course, for the [Commissioner], not the courts."  Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Social Security Ruling 16-3p, clarifies:

> that subjective symptom evaluation is not an examination of an individual's character . . . . Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .

SSR 16-3p, 2016 WL 1020935, at *14167 (orig. publ. Mar. 16, 2016). Moreover, this Court is required to uphold the Commissioner's determination regarding subjective complaints if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (internal quotation marks and citations omitted). Finally, in conducting its review, the Court is mindful the question is not whether the ALJ could have reasonably credited Plaintiff's complaints, but rather, "whether the ALJ was clearly wrong to discredit" them. Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011) (*per curiam*).

### 3. The ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff argues the ALJ's decision finding Plaintiff could perform a limited range of light work is not supported by substantial evidence, resulting in an incorrect RFC. Pl.'s Br., pp. 6-17. Specifically, Plaintiff argues the ALJ erred in discrediting Plaintiff's subjective complaints and

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

assessing the evidence. Id. at 11. The Court disagrees.

Plaintiff and her husband reported, as the ALJ explained, that Plaintiff had difficulty squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, using her hands, bathing, dressing, grooming, and cooking, as well as lifting any weight with her right hand or raising that arm over her head. R. 17, 215-32. Plaintiff's husband and children perform most of the chores and cooking. R. 17. Plaintiff often wears a sling for her right arm and a boot for her foot. R. 17.

The ALJ reviewed medical evidence from 2018 and 2019 showing numbness, tingling, and itching in Plaintiff's foot and right hand, but full sensation and strength for her left hand. R. 17, 19, 224-25, 867, 879-82, 1469, 1489, 1585. The ALJ also went through Plaintiff's succession of surgeries and physical therapy for her right hand and arm while Plaintiff was under the care of Dr. Dhruti Contractor from 2018 to 2019. R. 17-18, 282, 298, 447-64, 499, 564, 647, 752, 824, 854, 875, 1535-36, 1447, 1456. After three surgeries and therapy, Plaintiff did not report improvement for her arm pain; however, Dr. Contractor and her therapist did note some improvements. R. 18, 1378, 1409, 1431. Dr. Contractor referred Plaintiff to pain management, and Plaintiff later found some success through acupuncture and a Kenalog injection, though still experienced pain. R. 18-19, 1299, 1337, 1361, 1788-90, 1881, 1915.

After this initial analysis of the record, the ALJ found Plaintiff's subjective complaints "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." R. 19. The ALJ continued, finding examination records supported an RFC of light work with some limitations, and further found Plaintiff's subjective complaints were only partially supported. R. 19-20. Specifically, the ALJ found Plaintiff's medical providers

"consistently noted full strength in her extremities and normal gait." R. 19 (citations omitted); R. 455, 499, 609-10, 620, 622-23, 635, 655, 666, 677, 681, 697, 726, 824, 837, 867, 875, 879, 1378, 1474, 1535-36, 1932.

The ALJ then examined evidence from state agency medical consultants, Drs. Arthur Schiff and R. James Mabry, from 2019 and 2020 showing Plaintiff could "perform work at all levels with frequent handling with the bilateral upper extremities." R. 19; R. 47-55, 57-68. The ALJ found their opinions generally persuasive as they were consistent with other medical evidence, but also found their recommendations were not restrictive enough. R. 19. The ALJ found evidence from Dr. Contractor both persuasive and unpersuasive; the Court accepted Dr. Contractor's opinions concerning Plaintiff's temporary, post-surgery restrictions, but rejected his opinions concerning Plaintiff's inability to work or concentrate due to her pain level. R. 20. The ALJ found his opinions were inconsistent with other evidence of Plaintiff's ability to concentrate as well as Dr. Contractor's own examinations showing Plaintiff had a normal grip strength. R. 20, 479, 484, 1345, 1395, 1407, 1581, 1794, 1807, 1814, 1820.

Plaintiff's main objection is the ALJ's "failure to provide *any* bridge, no less a reasonable or logical one" between the evidence and the ALJ's conclusion. Pl.'s Br., pp. 14-16. That is not the case. The Court finds the ALJ's examination of the evidence is sufficient and created an implication "so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1561-62. By clearly laying out Plaintiff's own experiences and the objective evidence both in contradiction and support, the ALJ made clear how she considered Plaintiff's subjective complaints in light of the other evidence. Contrary to Plaintiff's contention, (Pl.'s Br., p. 13-17), the ALJ discussed the factors laid out in 20 C.F.R. § 404.1529(c)(3), as she described, for example, Plaintiff's struggles cooking and doing chores, methods and effects of pain management, and other functional limits

9

Plaintiff has experienced as a result of her impairments. The ALJ simply viewed the evidence differently than Plaintiff desired.

As explained, several of Plaintiff's providers corroborated the medical evidence supporting the RFC finding, revealing Plaintiff had full strength in her extremities and a normal gait. See R. 19. The ALJ also accounted for Plaintiff's pain in the RFC by limiting Plaintiff to light work in which she must be afforded the opportunity to sit or stand for one or two minutes at a time at work, and she can never climb ladders, ropes, or scaffolds. R. 17. Notably, the ALJ's RFC finding added more restrictive limitations than the prior administrative findings of state agency medical consultants Drs. Schiff and Mabry. R. 19. The ALJ recognized Plaintiff's subjective complaints but discounted the complaints according to the objective evidence before the ALJ. Holt, 921 F.2d at 1223.

Plaintiff's attempt to interpret the facts differently than the ALJ by pointing to select facts favoring her view of disability provides no basis for this Court to reverse or remand. This Court's job is not to review the administrative record *de novo*, but rather is to review the record to determine whether there is substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59. Plaintiff concludes the ALJ must have "relied solely on her lay interpretation of the record to conclude that the medical evidence contradicts Plaintiff's described limitations" because the evidence skewed so heavily towards a different RFC and disability finding. Pl.'s Br., p. 17. However, that a different result is *possible*, does not mean the Commissioner's decision must be reversed. The ALJ's decision makes clear she adequately considered the record as a whole, including Plaintiff's subjective complaints, when determining her RFC. The ALJ acknowledged Plaintiff's subjective complaints, but after an extensive

review of the record, determined the complaints were not credible at the level of intensity claimed or with limiting effects that would preclude her from performing light work with the extensive list of limitations in the RFC. Thus, the ALJ properly considered Plaintiff's subjective complaints. The ALJ's determination is supported by substantial evidence, and the ALJ made no legal error.

As a last note, Plaintiff implies the ALJ erred by not questioning the VE regarding transferable skills. Pl.'s Br., pp. 10-11. However, the ALJ found the question of transferability not material to the DIB determination because the grid rules direct a finding of "not disabled" for RFCs of light work regardless of transferability if claimant is a high school graduate or more. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.15 & 202.14. Because the grid rules would always result in a "not disabled" determination if Plaintiff can perform light work, the ALJ did not need to question the VE regarding transferability. Because an RFC of light work is supported by substantial evidence, as explained above, the ALJ made no error.

### B.    Plaintiff's Constitutional Arguments Do Not Entitle Her to a Remand

Plaintiff next argues the SSA's structure is unconstitutional because the Commissioner of Social Security "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.SC. § 902(a)(3); Pl.'s Br., p. 18. In Seila L. LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2197 (2020), the Supreme Court struck down a similar provision protecting the Director of the Consumer Financial Protection Bureau ("CFPB") from removal, holding the "CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." The Court explained the CFPB's structure "clashes with constitutional structure by concentrating power in a unilateral actor insulated from Presidential control." Id. at 2192. Thus, Plaintiff argues the decisions of the ALJ

and AC in the present case, made under the authority of a Commissioner insulated from Presidential control with unconstitutional protections from removal, are tainted and invalid, and remand is required. Pl.'s Br., p. 19.

Defendant agrees the removal restriction in § 902(a)(3) is unconstitutional, but argues, *inter alia*, the restriction has not caused Plaintiff harm, so Plaintiff is not entitled to remand on that basis. Comm'r's Br., pp. 4-5. In response, Plaintiff narrows her argument, specifying just the AC's decision, issued after President Joe Biden took office, was made pursuant to a delegation of authority from former Commissioner Andrew Saul who would have been removed by President Biden prior to the AC's decision but for the unconstitutional removal provision. Pl.'s Reply Br., pp. 2-4. As a result, Plaintiff received neither a constitutionally valid adjudication nor determination from the AC and suffered harm that necessitates remand and rehearing. Id. at 2-3. Therefore, the question before the Court is whether the unconstitutional removal restriction caused Plaintiff harm if President Biden sought to, but was unable to, remove Commissioner Saul from office when the AC denied review of the AJC's decision.

### 1. Background

Recently in Collins v. Yellen, 141 S. Ct. 1761, 1787 (2021), the Supreme Court took up the question of relief in the face of an unconstitutional removal restriction protecting the Director of the Federal Housing Finance Agency ("FHFA"), much like the ones found in Selia Law and § 902(a)(3). After finding the removal restriction unconstitutional, the Court first held "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office." Collins, 141 S. Ct. at 1788 n.23 (citing Selia Law, 140 S. Ct. at 2207-11). Because the Director had constitutional authority to exercise power through proper *appointment* to the office, the remedy for an improper restriction on *removal* was not to reflexively

vacate or remand decisions made by the Director when he was under the protection of the removal restriction. Id. at 1787-88. Rather, the remedy must follow the harm. The Court held it is "possible for an unconstitutional provision to inflict compensable harm," but only under certain circumstances. Id. at 1788-89. The Court provided the following hypothetical.

> [F]or example, [suppose] that the President had attempted to remove a [FHFA] Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

Id. at 1789. So, to obtain relief, there must a nexus between the unconstitutional limit on Presidential control—i.e., the removal restriction—and the harm alleged by Plaintiff. And, if the officer who committed the act complained of would no longer have been an officer but for the removal restriction, then that nexus might exist. The Supreme Court ultimately remanded Collins so the lower courts might determine whether the removal restriction on the FHFA Director caused harm in that instance. Id. at 1789; see Rickles v. Kijakazi, No. 8:20-CV-2988-AAS, 2022 WL 1153803, at *5 (M.D. Fla. Apr. 19, 2022) ("Multiple courts . . . in the wake of Seila Law and Collins have similarly concluded plaintiffs must establish the removal provision of 42 U.S.C. § 902(a)(3) caused some compensable harm to warrant remand.").

In her concurrence, Justice Elana Kagan specifically discussed the implications of Collins on the SSA.[3] Id. at 1799-02 (Kagan, J., concurring). Justice Kagan theorized:

> Given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. Presidential control does not show itself in all, or even all important,

---

[3] Justice Kagan joined in full the majority's discussion of the proper remedy for an unconstitutional removal restriction. Collins, 141 S. Ct. at 1801 (Kagan, J., concurring). The Majority also noted the possible impact of Collins on the SSA but did not comment further on the question. Id. at 1787 n.21.

13

regulation. When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

Id. at 1802 (internal citations and quotations omitted). Lower courts have uniformly agreed with Justice Kagan when adjudicating Social Security appeals. Plaintiff does not cite, and the undersigned has not found, a single instance of a District Judge reversing a Social Security decision on the basis of § 902(a)(3)'s unconstitutionality. See Pl.'s Reply Br., p. 3; Comm'r's Br., pp. 10-11 n.3; Vickery v. Comm'r of Soc. Sec., No. 5:21-CV-122-PRL, 2022 WL 252464, at *5 (M.D. Fla. Jan. 27, 2022). Courts have consistently found no nexus between ALJ and AC decisions on appeal and Commissioner Saul's protected tenure of office.[4] However, the hypothetical remains, and Plaintiff argues this case fits the mold.

2. **Analysis**

Plaintiff's timeline is unique. Commissioner Saul took office on June 17, 2019, after being appointed by President Donald Trump and confirmed by the U.S. Senate. The ALJ issued the decision on December 15, 2020. President Biden took office January 20, 2021. The AC denied review of the ALJ's decision on April 30, 2021. Commissioner Saul was removed from office by President Biden on July 9, 2021. Accordingly, Plaintiff no longer argues a connection between the removal restriction and the ALJ's decision: he cannot prove President Trump would have removed Commissioner Saul prior to the ALJ's decision or that the removal restriction had any impact on the ALJ's adjudication at that time. See Pl.'s Reply Br., p. 2 ("Plaintiff will not pursue

---

[4]Unlike a Commissioner confirmed by the Senate such as Commissioner Saul, Acting Commissioners do not have protected tenure and may be removed at will. Any decisions made under Defendant or former Acting Commissioner Nancy Berryhill are not impacted by the potentially unconstitutional § 902(a)(3). John v. Kijakazi, No. 20-61123-CIV, 2022 WL 718667, at *5 (S.D. Fla. Mar. 1, 2022), *adopted sub nom.* Agnes v. Comm'r of Soc. Sec., 2022 WL 715188 (S.D. Fla. Mar. 10, 2022).

the ALJ issue any further"); see, e.g., Smith v. Kijakazi, No. 7:21-CV-00059-AKK, 2022 WL 1063640, at *9 (N.D. Ala. Apr. 8, 2022) ("[Plaintiff] does not argue that President Trump, who nominated Commissioner Saul, would have removed him but for § 902(a)(3)."); Lisa Y. v. Comm'r of Soc. Sec., No. 321-5207-BAT, 2021 WL 5177363, at *7 (W.D. Wash. Nov. 8, 2021) ("[N]othing [shows] former President Trump would have removed Commissioner Saul and appointed a new Commissioner who would have administered this Plaintiff's claims differently.").

Plaintiff instead notes the AC's decision to deny review was made three months after President Biden was inaugurated and three months before President Biden removed Commissioner Saul from office. Because President Biden would have presumably fired Commissioner Saul before the AC's decision had he known he could, Plaintiff argues the AC's decision falls within the narrow category of situations where the removal restriction "clearly cause[d] harm." Collins, 141 S. Ct. at 1789.

President Biden obviously wanted to fire Commissioner Saul because he fired Commissioner Saul. Shortly after the Supreme Court issued its opinion in Collins on June 23, 2021, President Biden requested a memo from the Department of Justice's Office of Legal Counsel ("OLC") on whether he could remove at will Commissioner Saul. Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot., 2021 WL 2981542, at *1 (O.L.C. July 8, 2021). OLC advised the President he could, and President Biden removed Commissioner Saul from office the next day. Id.; Nicole Ogrysko, Biden Fires Saul as SSA Commissioner, FED. NEWS NETWORK (July 9, 2021, 5:28 PM), https://federalnewsnetwork.com/people/2021/07/biden-fires-saul-as-ssa-commissioner/. The Court is sure President Biden would have acted sooner, even before the AC's decision on April 30th, had the law been clear sooner. However, the date President Biden would have fired Commissioner Saul is not wholly determinative. Plaintiff still has not specifically

15

demonstrated how the timeline creates a nexus between the removal restriction and the harm suffered. See Collins, 141 S.Ct. at 1788 n.24 (even if plaintiff "can establish standing by showing that it was harmed by an action" taken by the officer, that "does not mean that actions taken by such an officer are void *ab initio* and must be undone"); Simanson v. Comm'r of Soc. Sec. Admin., No. CV-20-02233-PHX-MTL, 2022 WL 1153383, at *4 (D. Ariz. Apr. 19, 2022) (finding no "but-for causal chain" linking the denial of benefits to the removal restriction.)

Plaintiff alleges three aspects of harm: (1) she was denied DIB, and she did not receive a constitutionally valid (2) adjudication and (3) determination by the AC. Pl.'s Reply Br., pp. 2-3. Plaintiff connects these harms to the removal restriction by providing a statement from the White House issued after President Biden discharged Commissioner Saul. Id. at 4. In that statement, the White House complains that Commissioner Saul, throughout his tenure, undermined and politicized Social Security disability benefits and reduced due process protections for benefit appeals hearings. Ogrysko, supra.[5] Because Commissioner Saul's removal was, in part, motivated by his handling of DIB and appeals, Plaintiff argues there is a "direct causal nexus" between the removal restriction and Plaintiff's experience with the AC. See Pl.'s Reply Br., p. 5. The Court is not so convinced.

---

[5]The statement in full:

> Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25% of the agency's workforce, not repaired SSA's relationships with relevant federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the president's policy agenda.

Ogrysko, supra.

Plaintiff has not shown how President Biden's initial inability to exert control over Commissioner Saul harmed Plaintiff's DIB adjudication and outcome. See Kaufmann v. Kijakazi, 32 F.4th 843 (9th Cir. 2022) (holding harm from § 902(a)(3)'s unconstitutionality cannot be based on "speculation alone"); Nichole Delores Ford v. Kilolo Kijakazi, No. CV 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) (plaintiff must show removal restriction caused harm, not Commissioner Saul himself). Her allegations are simply too conclusory. For example, Plaintiff has not "identif[ied] a particular due process violation that had an effect on her disability determination." O'Leary v. Kijakazi, No. 2:21-CV-00889-CSD, 2022 WL 820015, at *10 (D. Nev. Mar. 18, 2022).

Plaintiff's appeal is primarily based on her disagreement with the ALJ's view of the evidence and Plaintiff's credibility. She does not allege any due process issues or other problems with the AC's later denial of review, other than the outcome. Plaintiff also has not "suppl[ied] evidence that Commissioner Saul or President Biden played a role in her claim, even if President Biden's regulatory philosophy or policy goals indeed stood at odds with those of the Commissioner he removed." Smith, 2022 WL 1063640, at *9. While Plaintiff quickly—and incorrectly—states Commissioner Saul promulgated rules without constitutional authority, (Pl.'s Br, p. 18), she never specifies "which social security rules, if any, were promulgated by [Commissioner] Saul during his tenure and applied in Plaintiff's case." Campbell v. Comm'r of Soc. Sec. Admin., No. CV-20-02048-PHX-JAT, 2022 WL 34677, at *4 (D. Ariz. Jan. 4, 2022); see Vaughn v. Kijakazi, No. 2:21-CV-00953-EJY, 2022 WL 1157007, at *2 (D. Nev. Apr. 19, 2022) ("Plaintiff does not allege the Commissioner of the Social Security Administration took any action that is in any way related to the ALJ's decision.")

In reality, "the President's choice of Social Security Commissioner has very little impact

on the result of any particular ALJ or Appeals Council decision." Katrina R. v. Comm'r of Soc. Sec., No. 2:21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022), *adopted sub nom.* Richards v. Comm'r of Soc. Sec., 2022 WL 456693 (S.D. Ohio Feb. 15, 2022). As Justice Kagan explained, "When an agency decision would not capture a President's attention, his removal authority could not make a difference." Collins, 141 S. Ct. at 1802; See Vergara v. Kijakazi, No. 20-22964-CIV, 2022 WL 769704, at *8 (S.D. Fla. Feb. 23, 2022) ("Plaintiff has alleged no direct action by the former tainted Commissioner himself in her denial of benefits, and no involvement—or even awareness—by the former President in the ALJ's decision."), *adopted sub nom.* Vergara v. Comm'r of Soc. Sec., 2022 WL 767125 (S.D. Fla. Mar. 14, 2022); Ricky Timm v. Kilolo Kijakazi, Acting Comm'r of Soc. Sec., No. 21-CV-131-SCD, 2022 WL 843920, at *7 (E.D. Wis. Mar. 21, 2022) ("[Plaintiff] does not allege that any official who headed the SSA while his disability claim was pending played any role in deciding his claim."). Plaintiff's DIB application was highly ordinary and presented no issues that would merit any input from Commissioner Saul. Just as the first Court to address this issue in the Eleventh Circuit found, "[t]he ALJ's decision here was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner." Perez-Kocher v. Comm'r of Soc. Sec., No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at *5 (M.D. Fla. Nov. 23, 2021), *adopted by* 2022 WL 88160 (M.D. Fla. Jan. 7, 2022).

Other courts, including two in the Eleventh Circuit, have yet to find a nexus when specifically faced with ALJ and AC decisions made under Commissioner Saul after President Biden took office. See Alicea v. Kijakazi, No. 21-60760-CIV, 2022 WL 902858, at *1 (S.D. Fla. Mar. 11, 2022), *adopted sub nom.* Alicea v. Saul, 2022 WL 898563 (S.D. Fla. Mar. 28, 2022); Tucker v. Kijakazi, No. 21-60943-CIV, 2022 WL 750559, at *1 (S.D. Fla. Feb. 8, 2022), *adopted*

18

*by* 2022 WL 742744 (S.D. Fla. Mar. 11, 2022); See also, e.g., Harry E. B. v. Kijakazi, No. 2:21-CV-00118-LEW, 2022 WL 669689, at *6 (D. Me. Mar. 6, 2022), *adopted by* 2022 WL 1451456 (D. Me. May 9, 2022); Travis A. C. v. Comm'r of Soc. Sec., No. 3:21-CV-403-DWD, 2022 WL 1422262, at *1 (S.D. Ill. May 5, 2022); Andino v. Kijakazi, No. CV 21-2852, 2022 WL 1135010, at *2 (E.D. Pa. Apr. 18, 2022); Costner, v. Kijakazi, No. 3:21-CV-00265-KDB, 2022 WL 1124206, at *1 (W.D.N.C. Apr. 14, 2022); Lisa D. v. Kijakazi, No. 8:21CV294, 2022 WL 952778, at *1 (D. Neb. Mar. 30, 2022); Katrina R., 2022 WL 190055, at *1.  The undersigned finds no reason why this case is different.  Plaintiff has not shown that proper Presidential control over Commissioner Saul would have changed her experience pursuing DIB.  See Darlene M. F. v. Kijakazi, No. 1:21-CV-053, 2022 WL 1153506, at *4 (N.D. Ind. Apr. 19, 2022) ("[Plaintiff] has not shown that the denial of her benefits was the direct result of any actions taken by former Commissioner Saul."); Nudelman v. Comm'r of Soc. Sec. Admin., No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan. 11, 2022) ("While it is conceivable that this constitutional defect could cause compensable harm, Plaintiff has not shown that connection."); see also Selia Law, 140 S.Ct. at 2203 (a removal restriction might sometimes "contravene[]" the President's "supervision and control").  The removal restriction had no effect on the AC's decision to deny review of the ALJ's decision, and therefore Plaintiff cannot seek relief on that basis.[6]

---

[6]Because Plaintiff is not entitled to remand on the Constitutionality issue, the Court need not address the Commissioner's remaining arguments concerning the harmless error doctrine, de facto office doctrine, rule of necessity, and broad prudential considerations.  Alicea, 2022 WL 21-60760-CIV, at *9 n.2.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 11th day of May, 2022, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA